UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
                            )
V.                          )    Criminal No. 05-30057-MAP
                            )
                            )
NAOMI WATFORD,              )
         Defendant          )

DEFENDANT'S SENTENCING MOTIONS AND FURTHER AFFIDAVIT

Defendant Naomi Watford hereby moves for downward departure based on both extraordinary post-offense rehabilitation and extraordinary family circumstances, and she moves for a sentence below the guideline sentence pursuant to §3553(a). She also attaches a further affidavit.[1]

A. Factual Background

Ms. Watford has been found guilty of three counts of crack cocaine offenses. As she has met all the requirements for the safety valve, no mandatory minimum applies. Her guideline total offense level is 27. Given her Criminal History Category of I, her GSR is 70-87 months (before consideration of guideline departures). Ms. Watford has been living at home and on Pre-Trial Release pending sentencing.

The facts concerning the offense, Ms. Watford and her family are described in the

---

[1] The substance of these sentencing motions had been part of defendant's objections to the draft PSR. Those objections have now been withdrawn, with the note that the instant motions would follow. The further affidavit contains information already disclosed to the government, and the government has no objection to its being filed at this time.

Page 1 of 10

Presentence Report and the Exhibits to the PSR, and these facts are relied upon herein. The Exhibits include a psychologists' report by Dr. Sherry, sworn letters and other documents on which the defendant relies herein. Additional information concerning Ms. Watford's post-offense period, especially her schooling, is set forth in a Further Affidavit by Naomi Watford. (See attached.)

It should be noted that Ms. Watford is still under medical and dental care for treatment of injuries sustained during a home invasion that occurred after her arrest in this case. She has undergone a related procedure on January 3. Her remaining medical/dental appointments are for February 4 and February 21, 2007. It may also be relevant to note that Ms. Watford is scheduled to graduate from cosmetology school in April, 2007.

### B. Legal Background

1) <u>In General</u>: The guideline sentence calculation is neither mandatory nor presumptively controlling. It is entirely "possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." Id. at 518. <u>United States v. Jimenez-Beltre</u>, 440 F.3d 514, 518-520 (1st Cir. 2006), *cert. denied*, 2007 US Lexis 145 (January 8, 2007). For the sentence to be reasonable, the court must consider the various factors set forth in 18 U.S.C. § 3553(a).

"Post-Booker, a district court should normally begin with a guideline calculation, and . . . after considering departures, the district court should decide whether other factors (beyond the guidelines) warrant an ultimate sentence above or below the guideline range." <u>United States v. Alvarez-Cuevas</u>, 2007 U.S. App. LEXIS 161 (1st Cir. 2007)(internal quotation marks omitted, citing <u>United States v. Smith</u>, 445 F.3d 1, 4 (1st Cir. 2006)).

2) <u>Legal Standard for Downward Departures Based on Extraordinary Post-Offense Rehabilitation</u>:  A departure based on extraordinary post-offense rehabilitation should be granted only where the defendant has evidenced a meaningful "change in attitude" subsequent to the offence and prior to sentencing.  <u>U.S. v. Craven</u>, 239, F.3d. 91, 100 (1st. Cir. 2001)(where the fact that the defendant stopped drinking was not enough to support this departure.)

3) <u>Legal Standard for Downward Departures Based on Extraordinary Family Circumstances</u>:   Ordinarily, family ties and responsibilities are not grounds for a departure, §5H1.6, but extraordinary family circumstances may be.  Both financial and psychological needs are to be considered.  For example, in <u>U.S. V. Scalmo</u>, 997 F 2d 970 (1st. 1993), where there was professional evidence that an ADHD child had benefitted from the care of non-biological parent (defendant), and the child would suffer and possibly regress from the parent's loss due to imprisonment, a downward departure by the district judge was upheld on appeal.  According to the Application Note for §5H1.6, "the court shall consider:  the seriousness of the offense, the involvement, if any of member's of the defendant's family, and the danger to members of the family as a result of the offense.  The same Application Note further advises the court to consider whether the guideline sentence (without a departure) will cause a substantial, direct and specific loss of essential caretaking to the defendant's family; whether the loss substantially exceeds a loss incident to incarceration for a similarly situated defendant, whether effective remedial or ameliorative programs are reasonably available, and whether the departure will effectively address what would otherwise be the loss of caretaking or financial support.

4) <u>Factors to be Taken into Account in Imposing a Non-Guideline Sentence</u>:  Following

calculation of the advisory GSR (including departures, if any), the sentencing court is instructed to consider the following factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .; (5) any pertinent policy statement . . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records . . .; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

### B. Motions for Downward Departure

1) <u>Motion for Departure Based on Extraordinary Post-Offense Rehabilitation</u>:  Naomi Watford moves for a downward departure based on Extraordinary Post-Offense Rehabilitation. (See Affidavit Attached.)   A downward departure on this motion is appropriate because that for the first time in her life, Ms. Watford has voluntarily undertaken an enterprise (cosmetology school) that is future oriented, potentially rewarding personally and financially, and entirely constructive.  The original decision to embark on this effort and daily decision to carry through with it reflects a major change of attitude from the fast life, "day to day" existence that Ms. Watford was living at the time she committed the offenses.   (See her attached affidavit.)

In his November 26, 2006 report, Dr. Sherry observed:

> One only needs to learn of Ms. Watford's childhood of physical abuse and exposure to a drug-abusing stepfather to appreciate that it has not been easy for her at this point in her life to be bettering herself. One only needs to learn of her association and attraction to criminally-involved peers prior to the offense and the home invasion to appreciate her efforts to better herself through consistent work and schooling. She has, I believe, begun to turn a corner in her life.
> Pg. 12.

Post-offense rehabilitation is warranted as grounds for a downward departure because her conduct has been extraordinary and reflects a radical change in life-style and attitude.

2) <u>Motion for Departure Based on Extraordinary Family Circumstances</u>:

Naomi Watford moves for a downward departure based on Extraordinary Family Circumstances. Dr. Sherry's detailed psychological evaluation[2], based on interviews with the family, a home visit, interviews with treating mental health professional, review of records, and consideration of alternatives caretakers, contains the following opinions: "I was very impressed by the way that Ms. Watford maintained her family." Pg. 7. "There is no doubt that incarceration for Ms. Watford will have a pronounced and deleterious effect on herself and her family." P. 12. If Ms. Watford "were removed from their [the children's] lives. their psychological reactions [to the home invasion] would very likely worsen dramatically." P. 12. Dr. Sherry also notes:

> I think were there only one child or perhaps two at the most, Ms. Watford's mother would be able to manage the situation [if Ms. Watford were incarcerated]. However, four children, even placid ones, would stress Ms. Watford's mother to the point that it is unlikely she could be effective with the kids. The wide range of the children, from one in diapers to one preparing to enter the world of boys, would also be a great challenge for Ms. Watford's mother. And I think that the three vulnerable children are also problematic because of their different vulnerabilities. For Champagne, her mother's absence would most likely activate PTSD-like

---

[2]Michael S. Sherry, Ph.D., has been certified by Commonwealth of Massachusetts since 1989 as a Qualified Forensic Psychologist, with extensive experience in forensic evaluation including CHINS evaluations, families and parenting capacities. Dr. Sherry's resume is attached to his report.

> anxieties related to the home invasion. She is the one most likely not to burden anyone with her upset, but especially as she matures, to flee from inner world through acting out, at her age in time, along more sexual lines. .... For Diego, the loss of his mother will not be understandable and not be bearable. He is the most likely to act out in an aggressive way. ... And for Tiajuana, my concern is that without the youthful, overseeing, disciplining energy of her mother, her behavioral fragility, described by a therapist in treatment as devolving into chaos, will manifest itself.

P. 12

The three affidavits of Ms. Watford's mother, JoAnn Best, corroborate Dr. Sherry's evaluation that the children are in precarious conditions and that neither Ms. Best not any other family member would be capable of caring for them, were Ms. Watford incarcerated. See, Affidavits of Joanne Best dated November 26, 2006, November 28 2006, and December 11, 2006. Ms. Best's ability to take full responsibility for her grandchildren is compromised by Ms. Best's medical chronic condition, which at times is debilitating and is worsened by stress. See, Affidavit of JoAnn Best dated December 11, 2006 (par. 5)(describing Ms. Best's condition of cardiomyopathy.)

From the foregoing, it appears that Ms. Watford is an indispensable caretaker for her children. Further, the psychological hardship that would result for the children, were she incarcerated would likely seriously exacerbate the psychological injury which the children had suffered during the home invasion.

Although the home invasion occurred more than a year ago, and Ms. Watford did not recognize the perpetrators, it is worth noting that 1) Ms. Watford has since installed a security door and security cameras, and 2) there have been no other incidents.

C) <u>Motion for a Below-Guideline Sentence</u>

Naomi Watford moves for a below-guideline sentence based on §3553(a) considerations. Ms. Watford has been found guilty of possession with intent to distribute 82.9 grams of crack cocaine, which is well recognized as a very serious offense. Typically, the nature of that offense results in incarceration because the seriousness of the offense indicates the need for a sentence that will be seen by others as a serious and may therefore tend to promote respect for the law, provide just punishment and deter others from similar criminal conduct. (See, §3553(a)(1)and (2)(A)and (B).) However, under the §3553(a) statutory scheme, the court must also consider other factors which in this case mitigate against incarceration. These mitigating factors will be discussed in the order they appear in the statute:

-- *"the history and characteristics of the defendant"* (§3553(a)(1) --

Ms. Watford was 25 years old when she committed these offenses. She had four children ranging in age from a few months to ten years old. She was a single mother. The father of the oldest two had a drug problem, the relationship ended, and Ms. Watford had worked two jobs to support the family. The father of the youngest two was in jail (on non-drug related charges).

Growing up, Ms. Watford's biological father was an alcoholic and crack cocaine addict. He moved out of the house and was incarcerated. When Ms. Watford was still a child, her mother remarried a man. This man had an addiction to heroin and crack cocaine and was frequently in state custody. When home, he was frequently verbally and physically abusive. He died in 1994. Ms. Watford left high school in her freshman year because she could not arrange for day care for her daughter. She worked as a nursing assistant. She obtained her GED in 1996. Her employment record reflects work in low-level jobs in the health care, fast food and convenience store industries. Briefly she worked as a book keeper.

Dr. Sherry carefully evaluated Ms. Watford with the benefit of interviews and psychological tests. Under a section called Test Results (pgs 7-9), Dr. Sherry describes Ms. Watford's condition, and describes how she adjusted to her childhood experiences and how those experiences inclined her to associate with a drug culture . See, Dr. Sherry pgs 7-9.

As for her current condition, Dr. Sherry expresses concern that the psychological injury suffered from the home invasion would worsen if Ms. Watford were to be incarcerated:

> Ms. Watford's psychological symptoms, especially her PTSD symptoms, are, in my opinion, on the mend. She is not one to ever broadcast her suffering. She is only one year post home invasion, beating and fear for the lives of her children. I am concerned about the effect of incarceration on her psychological state. I am concerned that her recovery from PTSD symptoms will be derailed were she incarcerated. I am concerned that an incarcerated environment will only encourage her to "toughen" when the treatment need is to remain vulnerable and "work through" the anxiety with a professional. Incarceration could easily lead her to psychological state worsening dramatically, which would be most unfortunate given the strides she has made.

Pg. 8.

Whatever brought her to the point of committing the instant crimes, it is worth noting that previously, Ms. Watford worked at legitimate jobs to earn money for herself and children. She has never been incarcerated. Her prior offenses were not drug related. The two assaults on her record both involved the father of her two oldest children. (One involved that man directly, another was a dispute about him with another woman.) Her other offenses were minor.

Since arrested in this case, she has been on Pre-Trial Release. At first, she was placed on a bracelet and then allowed to be on release without the bracelet. During this time, she decided to go to school in cosmetology at Kay Harvey in West Springfield. The program began in August, 2006 and ends in April, 2007. See Ms. Watford's Affidavit, attached.

Ms. Watford is an indispensable caretaker of her children. See, Dr. Sherry's report and the

Affidavits of Ms. JoAnn Best, Ms. Watford's mother.

--what is *"sufficient but not greater than necessary"* ... *"to protect the public from further crimes of the defendant"* (§3553(a)(2)(B) --

Ms. Watford has good record on pre-trial release and has responded well to supervision. Her progress in cosmetology school and her having found a constructive means to make a living that she enjoys provides her with alternatives to the life she had lead at the time she committed these offenses. She herself does not have a drug problem, and under the circumstances, supervision would be sufficient to protect from continued crimes of the defendant.

--what is necessary .. *"to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"* (§3553(a)(2)(B--

Ms. Watford needs an opportunity to obtain educational and vocational training, but during the pre-trial period, she has begun that process as a student at the Kay Harvey school in West Springfield. She also needs additional medical/dental care for the injuries sustained during the home invasion. Finally, she has responded well to Pre-Trial Services supervision and would be likely to respond well to corrective treatment by supervised by Probation. The most effective means of continuing her educational and vocational training, her medical/dental care and needed correctional treatment would be some form of home confinement, community confinement, community service and supervised release.

Finally, it seems fair to say that, in this case, a non-incarceration sentence would do the most to promote "respect for the law." (§3553(a)(2)(A). Such respect would be due because justice in this case may be seen as best served when it fully takes into account the facts of Ms.

Watford's history, the impact on her family, and the good prognosis for Ms. Watford for continuing without incarceration on the constructive, work-oriented path that she has been on subsequent to her arrest.[3]

WHEREFORE, through her counsel, Naomi Watford respectfully requests that the court allow her motions for downward departure and impose a non-incarceration sentence, with home confinement (or possibly community confinement), supervision and an extended period of community service.

RESPECTFULLY,
NAOMI WATFORD, By Her Attorney,

Date: January 11, 2007

*/s/ Myles C*

Myles Jacobson, Attorney
Jacobson & Fellows
16 Center Street Suite 314
Northampton, MA 01061
Tel: (413) 584-8181,   BBO #249600

CERTIFICATE OF SERVICE

I, Myles Jacobson, hereby certify that a copy of the foregoing has been delivered by hand this day, January 11, 2007, AUSA Kevin O'Regan, U.S. Attorney's Office, Federal Building and Courthouse, 1550 Main Street, Rm 310, Springfield, MA 01103.

*/s/ Myles C*
Myles Jacobson

---

[3] The PSR indicates under "Related Cases" that a person named Candace Mateo received a five year BOP sentence. Ms. Mateo, however, was not eligible for the "safety valve." Ms. Mateo's five year sentence was the minimum mandatory, and it was a below guideline sentence.

FURTHER AFFIDAVIT OF NAOMI WATFORD

To Whom It May Concern:

I am writing this letter to explain how I decided to go to school after I was arrested in this case. A couple years ago I decided that I wanted to go to school to do hair, nails, and facials. Hoping one day to open a spa. But at the time the life I was living was fast. Day by day. I was a young single mother with no career.

I was arrested once before. Michael Eurquart, the father of my two older children hit me, and I spit back at him. I was also charged with assault and battery on Amy Hayes. She and I had a fight about Michael Eurquart.

When I got arrested in this case, I decided no matter what I was gonna change my life. For the better. I went on line and looked up schools and schedules that would best suit me and my children. I decided to go to Kay Harvey in West Springfield. I have been attending since August of 2006. School is Monday through Friday. I will be graduating in April of 2007. Going to school for cosmetology is a lot harder than I had expected it to be. I thought it would be just working on a doll for a couple of months and doing a couple of tests and I'm done. It actually has proven to be a little more complicated than that. You start by doing theory and practicals all at once. You have to complete 250 hours, pass all 26 test from the book, and take and pass 5 big tests. It's all worth it to get downstairs. Once downstairs you get to work with the public. All hands on. That's what I'm doing now. You still have to do theory and practicals. You have 26 different tests and your 5 more tests. Working with the public is great. You get all the training as if you were out on your own. Everything is a real life situation. My instructors are great.

They're very patient and thorough. They help you deal with certain situations that may arise while your in the workforce. They ensure confidence. They reassure you that everybody is not perfect. All we can do is try our best. After I complete and pass all my tests and finish my 1000 hours I will get a diploma for cosmetology. Once I get my diploma I can call and make an appointment to take my state boards and get my license. Once I get my license I have to work under another stylist for 2 years. After that I can hopefully get my own shop. This is the opportunity in life I have always wanted. Now I finally have the chance to make it happen for me. I think that working with Irma has been good for me too. She is very straightforward at what she expects from you. She made sure that I knew everything I was suppose to do was all up to me. I could either be responsible or be in jail. I'm almost done school and just hope I get the opportunity to prove that my lifestyle has changed. I'm a better person and have changed for the better.

SIGNED UNDER PENALTIES OF PERJURY ON JANUARY 9, 2007.

_Naomi Watford_
Naomi Watford